## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GIANNI MALTESE, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> SMITH TRANSPORT, INC., et al., <br><br> *Defendants.* | CASE NO. 3:19-cv-00060 <br><br> MEMORANDUM OPINION <br> & ORDER <br><br> JUDGE NORMAN K. MOON |

Plaintiff has filed a motion in *limine* seeking to exclude any testimony or evidence regarding Huntington's disease. Dkt. 55. As background, "Huntington's disease is an inherited disorder that causes brain cells, called neurons, to die in various areas of the brain, including those that help control voluntary (intentional) movement. Symptoms of the disease, which gets progressively worse, include uncontrolled movements … abnormal body postures, and changes in behavior, emotion, judgment, and cognition." NIH, National Institute of Neurological Disorders and Stroke, *Huntington's Disease Information Page*, https://www.ninds.nih.gov/Disorders/All-Disorders/Huntingtons-Disease-Information-Page.

The parties appear to agree on the relevant facts relating to Plaintiff's motion. There is no dispute that Plaintiff's father has been diagnosed with Huntington's disease, and his brother has the genes for Huntington's—though Plaintiff's brother is not exhibiting symptoms. Dkt. 56 at 2; Dkt. 63 at 2. The parties also agree that the gene underlying Huntington's disease is passed down by one parent; therefore, there is a 50-50 chance that Plaintiff may have the gene, and thus, Huntington's disease. *See id.*; *see also* NIH, *Huntington's Disease Information Page* ("Each child of a parent with HD has a 50-50 chance of inheriting the HD gene. A child who does not

1

get the HD gene will not develop the disease and cannot pass it to subsequent generations. A person who inherits the HD gene will eventually develop the disease."). Lastly, there is no dispute that Plaintiff has not been tested for Huntington's disease. Dkt. 56 at 2; Dkt. 63 at 2.

Plaintiff has filed a motion "to have any mention that Huntington's disease is a cause for Plaintiff's symptoms and difficulties [ ] excluded at the trial" in this case. Dkt. 56 at 2. Plaintiffs assert that any evidence about the disease is irrelevant, and, in any event, should be excluded under Fed. R. Evid. 403 on the basis that it is more likely to mislead the jury than be probative. *Id.* at 2–3. Plaintiff argues that "there are no opinions in this case stating that Plaintiff's fifty percent chance of having the gene for Huntington's disease is the cause of his ongoing symptoms." *Id.* Plaintiff also contends that there is no evidence "that the potential for inheriting Huntington's disease is causing Plaintiff's problems." *Id.*

Defendants oppose the motion. Dkt. 63. Defendants concede that they "will not be suggesting at trial that the plaintiff *has* Huntington's Disease and that the disease itself is causing his symptoms." *Id.* at 2. However, Defendants write that they do intend to argue that Plaintiff's "*knowledge* that he has a 50-50 chance of having an incurable, deadly, progressive neurodegenerative disorder, clearly is one cause of the plaintiff's anxiety, depression and stress." *Id.* In Defendants' view, "the *worsening* of [Plaintiff's] symptoms is inconsistent with concussion and much more consistent with the plaintiff dealing with significant anxiety-provoking stressors in his life." *Id.* at 6. Defendants further assert that "[t]here is substantial evidence in the case that plaintiff suffers from anxiety, stress and other emotional factors that are unrelated to the accident," and likely to contribute to his headaches." *Id.* at 6–7. Accordingly, Defendants conclude that "this evidence is highly relevant and its probative value clearly outweighs any prejudice it will have on the plaintiff." *Id.* at 2.

Plaintiff's primary argument is that any evidence of Huntington's disease should be excluded under Fed. R. Evid. 403. Dkt. 63. Rule 403 provides: "[t]he court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: *unfair prejudice*, *confusing the issues*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphases added). The Advisory Committee's Note to the Rule further clarifies that "'[u]nfair prejudice' within its context means an *undue tendency* to suggest decision on an *improper basis*, commonly, though not necessarily, an emotional one." (Emphases added). Under Rule 403, relevant evidence is inadmissible "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and … this risk is disproportionate to the probative value of the offered evidence." *PBM Prods., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 124 (4th Cir. 2011) (internal quotation marks omitted). The Court will not exclude any evidence of Huntington's disease pursuant to Fed. R. Evid. 403, as Plaintiffs have requested.

At the outset, the Court notes that Defendants' stated limitation is significant. Defendants concede that they "are not arguing that the plaintiff *has* the disease which is causing his symptoms." Dkt. 63 at 2. Rather, Defendants intend to argue that "the fact that the plaintiff *knows* he has a 50-50 chance of having the disease is understandably causing anxiety and stress which in turn is causing many of the other symptoms that the plaintiff claims are related to the accident." *Id.* Regardless whether the jury would ultimately find persuasive Defendants' position on the issue, they identified another possible cause of Plaintiff's worsening symptoms unrelated to the accident, and there is a substantial evidentiary basis for that contention.

For instance, Plaintiff's treating physician and expert Dr. O'Shanick testified at his deposition, in pertinent part, as follows:

3

> **Q.** Do you have an opinion as to whether or not Gianni suffers a permanent traumatic brain injury?
>
> **A.** I think at this point … the issue is not so much the role of a traumatic brain injury as much as it is the overall impact of the event on his emotional health and emotional life. I think, yes, there is the vision issue, as I mentioned. Yes, there is the component of post-traumatic headaches that he has.
>
> But I think that overall what is most disabling for him is the emotional ramification of the injury and the upheaval in the family dynamics that have happened subsequent to it.
>
> …
>
> **Q.** Okay. So let me ask you, because you specifically reference the Huntington's disease. Which obviously *Gianni's learning of the fact that he has a 50/50 chance of having a deadly incurable disease would obviously provoke anxiety in Gianni; right*?
>
> **A.** *It would. It would. It provokes anxiety in him.* He's seeing his brother deal with it in his brother's way. He's seeing his dad deal with it in his dad's way."

Dkt. 63-2 at 3 (emphases added).

Dr. O'Shanick also testified in his deposition that "headaches are generally multi-factorial. *His headaches relate to multiple different things*. They relate to vision issues. They relate to … muscle tension. They relate to dehydration. *They relate to depression*. They relate to fatigue elements. So at any point in time those things can be better or worse … And so, sure, I would expect that he will have variability in his headaches." Dkt. 62-1 at 2–3 (emphasis added); *see also id.* at 3 ("Are there other psychosocial factors that might be playing a role later on? Sure, there are psychosocial factors." (Emphasis added)). In Dr. O'Shanick's expert report, he concluded that

> "The other more ominous aspect of the family medical history lies in the genetics of Huntington's Disease. Gianni's risk of that disorder is 50-50. To live with the specter of that incurable degenerative disorder is an exceedingly anxiety-producing state which required the continuous use of coping strategies to defend against his becoming emotionally incapacitated. Coping mechanisms to address anxiety are based upon one's developmental level, genetics, and learned behavior. That being

> said, Gianni's use of physical activity (through soccer and spots) to contain anxiety was temporarily blocked after the concussion …
>
> While Gianni's 'concussive' biological disorder has demonstrated improvement and in some domains, recovery, *the psychosocial aspects of his 'concussion' continue to cause profound impairment and disability. Central to this is how to effectively build his sense of safety and relative health when at the core, there is a 50-50 chance of his having a degenerative disorder.* While that may not be the responsibility of the collision to address, at the very least, the collision severely compromised Gianni's use of denial as a coping mechanism for the potential diagnosis of Huntington's disease.

Dkt. 63-1 at 2 (emphasis added).

Moreover, Plaintiff's treating neuropsychologist, Dr. Donna Broshek, testified in her deposition, in pertinent part:

> **Q.** *Could his learning the fact that his father is disabled and also that he has a genetic deadly disease, could that cause someone to experience anxiety and stress?*
>
> **A.** *It certainly could.*
>
> **Q.** *From your history that you obtained, does it appear that he actually did experience anxiety as a result of learning that information?*
>
> **A.** *His mother described it as emotional difficulties, and he was – records noted that he was also diagnosed more formally with anxiety around that time.*

Dkt. 63-5 at 2 (emphases added).

Considering this evidence and testimony, the Court concludes that there is a substantial evidentiary basis underlying Defendants' argument that Plaintiff's 50-50 risk of Huntington's disease is causing him anxiety, depression, and stress. Dr. O'Shanick testified that the fact that Plaintiff has a 50-50 risk of Huntington's disease "*provokes anxiety in him*," and Dr. Broshek testified that the risk of such disease "certainly could" cause anxiety and stress, and further noted that Plaintiff was "diagnosed more formally with anxiety around that time" he learned of the potential for the disease, and experienced "emotional difficulties." There is also a substantial

5

evidentiary basis for Defendants' argument that other factors besides the accident caused or are exacerbating Plaintiff's headaches: e.g., that Dr. O'Shanick testified that headaches relate to "multiple different things" including "depression," and he also noted that "psychosocial factors … may be playing a role" in his headaches and interference with attention and memory.

Accordingly, considering this evidence of a possible alternative explanation for the injuries and symptoms Plaintiff attributes to the accident, the Court does not see a risk of "confusing the issues," "misleading the jury," or "*unfair* prejudice," meaning that the evidence would have an "*undue tendency* to suggest a decision on an *improper basis*." See Fed. R. Evid. 403. Nor has Plaintiff demonstrated how the risk of one of those "substantially outweighs" the probative value of such evidence, which appears to be central to Defendants intended defense. Therefore, the Court will not exclude this otherwise relevant evidence as Plaintiff has requested.

*However*, to mitigate any potential risk of confusion or prejudice, the Court **DIRECTS** the parties to **MEET AND CONFER** to seek an agreed **limiting instruction** to be given to the jury. Such limiting instruction would reflect the limited intended and permissible use for which Defendants seek to introduce such evidence of Huntington's disease: that it is not to be considered as evidence that Plaintiff has Huntington's or that Huntington's is causing Plaintiff's symptoms, but only the effect such risk of Huntington's may have on Plaintiff's mental state. The parties shall file the proposed limiting instruction(s) by **September 22, 2021** at **5:00 p.m.**

For these reasons, Plaintiff's Motion in *Limine* to exclude evidence of Huntington's disease is **DENIED**. Dkt. 55.

It is so **ORDERED**.

The Clerk of Court is directed to send a copy of this Order to all counsel of record.

*[signature: Norman K. Moon]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

Dated:   09/20/2021