# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GIANNI MALTESE, et al., | |
| *Plaintiffs*, | CASE NO. 3:19-cv-00060 |
| v. | MEMORANDUM OPINION <br> & ORDER |
| SMITH TRANSPORT, INC., et al., | |
| *Defendants*. | JUDGE NORMAN K. MOON |

Defendants have filed a motion in *limine* seeking to exclude Plaintiff's expert, Marie DiCowden, Ph.D., from testifying at trial that Plaintiff suffers from post-traumatic stress disorder ("PTSD"), or any other evidence of a diagnosis that Plaintiff has PTSD. Dkts. 42, 43.

Defendants argue that any such testimony that Plaintiff suffers from PTSD should be excluded largely on the basis that it was not timely disclosed to them. They assert that, "[d]uring the course of discovery, the Plaintiff had not identified PTSD as a diagnosis he received as a result of the accident and such a diagnosis was not included or mentioned in any of the medical records produced during the course of discovery." Dkt. 43 at 2. Defendants further assert that in June 2020, when Plaintiff provided his initial expert witness disclosures pursuant to Fed. R. Civ. P. 26(a)(2), "[n]one of the twelve experts identified diagnosed the Plaintiff with PTSD, treated the Plaintiff for PTSD, or were otherwise expected to testify that the Plaintiff suffered PTSD as a result of the accident." Dkt. 43 at 2. Then in October 2020, Defendants identified seven experts in their expert disclosures, including Dr. Ruben Echemendia, a neuropsychologist who evaluated and tested the Plaintiff (but who did not address PTSD in his expert report). *Id.*

Defendants assert that only in November 2020 did Plaintiff submit a "Rebuttal Expert Disclosure" that "identif[ied] for the first time Marie A. DiCowden, Ph.D., SFNAP as an expert and providing her report." *Id.*; *see also* Dkt. 43-4 (Plaintiff's counsel serving "Rebuttal Expert Disclosure" upon Defense counsel); Dkt. 43-5 (DiCowden Report). Therein, DiCowden concluded that Plaintiff "is suffering from severe post-traumatic stress disorder with dissociative symptoms," and that "[p]ast assessments of [Plaintiff] have failed to recognize the diagnosis of his post-traumatic stress disorder." Dkt. 43-5 at 10. Later in November 2020, Plaintiff's counsel provided Defendants another longer report from DiCowden, in which she identified three impressions: "Mild Traumatic Brain Injury with long term effects (mTBI)," "Probable Visual-Ocular Disorder (VOD)," and "Post-Traumatic Stress Disorder (PTSD)." Dkt. 43-6 at 29. Defendants move to exclude this testimony about PTSD on the basis that it "is not proper rebuttal testimony and is untimely" pursuant to Fed. R. Civ. P. 26(a)(2)." Dkt. 43 at 3. Defendants also argue that DiCowden "is not qualified to testify as to the other opinions under Virginia law." *Id.*

Plaintiff opposes the motion. Dkt. 47. First, Plaintiff argues that DiCowden's opinion and report constituted a proper "rebuttal opinion." *Id.* at 4. In Plaintiff's view, "the very nature of the rebuttal opinion goes to the fact that Defendants' experts either ignored or did not test for PTSD," and DiCowden merely "provid[ed] opinions that Defendants' experts were wrong to miss." *Id.* Plaintiff writes that he anticipates that "all of Defendants' experts will testify that Plaintiff has no lasting effects or injuries as a result of the accident on February 7, 2017." *Id.* Plaintiff argues that DiCowden's opinion that Plaintiff has untreated PTSD "directly refute[s] Defendants' expert witnesses' opinions." *Id.* at 6; *see also id.* at 4–6.

2

Rebuttal expert disclosures may be made "within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Rebuttal reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party …." *Id.* "Rebuttal evidence is defined as evidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party," but "[a] party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *E. Bridge Lofts Prop. Owners Ass'n, Inc. v. Crum & Forster Spec. Ins. Co.*, No. 2:14-cv-2567, 2015 WL 12831677, at *1 (D.S.C. July 9, 2015) (citations omitted). Moreover, "[r]ebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Boles v. United States*, No. 1:13-cv-489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015).

Upon consideration of the parties' arguments and applying the relevant authority and precedent, the Court concludes that DiCowden's testimony about PTSD is not true rebuttal testimony and her reports in this regard are not true rebuttal expert reports. In other words, DiCowden's testimony about PTSD was not "intended solely to contradict or rebut evidence on the same subject matter identified by another party …" *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

Plaintiff argues that DiCowden could opine that Plaintiff has PTSD as a "direct rebuttal" to Defendants' experts' anticipated positions that Plaintiff "suffered no lasting effects as a result of the accident." Dkt. 47 at 3. But if accepted, Plaintiff's argument has little if any limiting principle as to the type of evidence, or other diagnoses or injuries that Plaintiff could have brought forward for the first time under the guise of "rebuttal testimony"—reflecting that Plaintiff's argument is not a reasonable interpretation of Rule 26(a)(2)(D)(ii).

Moreover, notwithstanding the 50-plus injuries and conditions Plaintiff identified in discovery as caused by the accident, Dkt. 43-1 at 2–3, and the numerous experts that Plaintiff has

identified besides DiCowden, *see* Dkt. 43 at 2; Dkt. 68, Plaintiff has simply not provided any substantial explanation why PTSD could not have been discovered and included in their case in chief on damages. Plaintiff faults Defendants' experts because they "either ignored or did not test for PTSD," Dkt. 47 at 4, failing to explain why Plaintiff was unable to do precisely that in a timely manner. Indeed, at oral argument on the motion on September 13, 2021, the Court inquired why Plaintiff's doctors did not discover or diagnose PTSD sooner, Plaintiff's counsel acknowledged that he did not think they were looking for it. But the law is that a party may not "offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief," and that "rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Crum & Forster*, 2015 WL 12831677, at *1 (citation omitted). Accepting Plaintiff's position with respect to DiCowden's testimony about PTSD would violate each of those principles. Nor is there any substantial basis to conclude that the testimony of Defendants' experts like Dr. Echemendia that Plaintiff sought to rebut (*i.e.*, that he "suffered no lasting effects as a result of the accident," Dkt. 47 at 3) or the evidence or data underlying those opinions, were either unexpected or not otherwise previously available to the Plaintiff's experts themselves.

      Having found that DiCowden's testimony about PTSD is not a proper rebuttal expert opinion, the issue remains whether the Court should nevertheless allow evidence pursuant to Fed. R. Civ. P. 37(c)(1). That rule provides that if a party "without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1)," that party "is not allowed to use that information or witness to supply the evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The parties cite the Fourth Circuit's test set forth in *Southern States Rack & Fixture, Inc. v. Sherwin Williams Co.*, 318 F.3d 592, 597–58

(4th Cir. 2003), as governing this inquiry. Dkt. 43 at 5 (addressing *S. States* factors); Dkt. 47 at 8 (same). These factors are:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Southern States*, 318 F.3d at 597. "The party failing to disclose information bears the burden of establishing that the nondisclosure was substantially justified or was harmless." *Bresler v. Wilmington Trust Co.*, 855 F.3d 178, 190 (4th Cir. 2017).

Weighing these factors, and having considered the parties' briefing and argument on the matter, the Court concludes that these factors weigh decisively against allowing DiCowden's late diagnosis of PTSD and any evidence related thereto into evidence, as the nondisclosure was neither substantially justified or harmless.

Turning to the first factor, Defendants have persuasively explained how such evidence came at "great surprise" to them, especially considering that Plaintiff's interrogatory responses and other discovery failed to mention it, and "no other provider or medical record even mentions PTSD," Dkt. 43 at 5. This factor weighs against Plaintiff.

To be sure, the initial surprise about the disclosure came months ago, but the next factor ("the ability of the party to cure the surprise") further weighs against admission. As Defense counsel explained at oral argument, many depositions had already been taken by the point when they learned of the possible PTSD diagnosis, including Plaintiff's deposition, his parents, sister, friends, teacher, physicians and school advisor—all but the deposition of Dr. O'Shanick. *See* Dkt. 49 at 6. Moreover, defense experts has already examined Plaintiff (including Dr. Echemendia's two-day examination). To fully test and assess the possibility of PTSD, the Defense would have had to retake those depositions and conduct new examinations (or

supplement) them, at great time and expense. Plaintiff's response was that there was the time to redo all this is only a half-response, and it does not explain why Defendant should have been forced to bear the cost and undertake the substantial effort to redo all this discovery at the eleventh-hour. Plaintiff's other response to merely reiterate that rebuttal evidence and testimony necessarily comes in at a later stage of discovery is unpersuasive, as the Court has concluded that this was not proper or true rebuttal testimony or evidence. This factor weighs strongly against Plaintiff.

The Court further anticipates that allowing such testimony of PTSD without the parties having had the benefit of full development of the issue in discovery would add some disruption to the trial, although this factor only weighs slightly against Plaintiff. Turning to the fourth factor, Plaintiff argues broadly that DiCowden's testimony "is very important to ensuring that the jury has all the evidence needed to make a fair and just decision." Dkt. 47 at 9. Plaintiff reiterates that Defendants' anticipated position is that Plaintiff has "no ongoing issues attributable to the accident," but that DiCowden has concluded that PTSD "is causing Plaintiff issues to this day." *Id.* This argument supports a conclusion that evidence of a PTSD diagnosis is relevant and would support his case in chief. But Plaintiff has not particularly explained much less substantiated the specific importance of this diagnosis or evidence to his case, and in the context of the other evidence Plaintiff intends to present. There is no indication this evidence is especially important to Plaintiff's case, in light of the other evidence of other conditions and symptoms Plaintiff raises. This factor weighs in Plaintiff's favor, but only slightly.

Finally, with respect to the last *Southern States* factor, the Court has already concluded that Plaintiff's explanation for the late disclosure—*i.e.*, that it was rebuttal evidence to

6

Defendants' experts' failure to discover PTSD—was not persuasive. Thus, this factor further weighs against admission.[1]

Accordingly, the Court will **GRANT** Defendants' motion seeking to exclude DiCowden from testifying at trial that Plaintiff suffers from PTSD, as well as other evidence of a diagnosis that Plaintiff has PTSD. Dkt. 42.[2]

It is so **ORDERED**.

Entered this 24th day of September, 2021.

The Clerk of Court is directed to send a copy of this Order to all counsel of record.

*[signature]*
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[1] The Court notes Plaintiff's assertions that the COVID-19 pandemic caused the trial in this case to be reset several times and introduced other logistical complications and deadlines were continually shifting. Dkt. 47 at 6–7. Indeed, to their credit, it appears that the parties were able to work cooperatively to conduct substantial discovery and depositions in the midst of these difficult circumstances. Nonetheless, the Court concludes that the *order* in which DiCowden's report including her PTSD diagnosis was released—coming *after* Defendants' expert reports, *after* depositions, and *after* the examinations of the Plaintiff—even more than the specific timing of its disclosure, shows how its late introduction would be unduly prejudicial and burdensome to the Defendants. *See* Dkt. 49 at 5–6. And on that main issue, Plaintiff's arguments about COVID-19 and shifting deadlines are largely beside the point.

[2] In view of Plaintiff's acknowledgement that DiCowden was not "being offered to prove that Plaintiff sustained a brain injury in the crash," but just to "show that Plaintiff suffers from PTSD," Dkt. 47 at 11, there appears to be no disagreement between the parties that DiCowden would not testify about her non-PTSD impressions of Plaintiff pertaining to either "Mild Traumatic Brain Injury with long term effects (mTBI)," or "Probable Visual-Ocular Disorder (VOD)." Dkt. 49 at 7.