# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# CHARLOTTESVILLE DIVISION

| | |
|---|---|
| GIANNI MALTESE, et al., | |
| *Plaintiffs*, | CASE NO. 3:19-cv-00060 |
| v. | MEMORANDUM OPINION |
| SMITH TRANSPORT, INC., et al., | |
| *Defendants*. | JUDGE NORMAN K. MOON |

As the Court stated on the record at the final pretrial conference on September 23, 2021, and as stated in an oral docket order on September 25, 2021, this Court has denied Defendants' motion to exclude the testimony of Dr. Wendy Goodwin. Dkt. 44. This Memorandum Opinion further explains the reasoning underlying this Court's Order denying the motion. Dkt. 114.

Defendants raised several challenges to Plaintiff's proposed expert, Dr. Wendy Goodwin. The first was that she was "not sufficiently qualified to offer expert testimony" regarding Vestibulo-Ocular Dysfunction (or "VOD"). The basis for that argument largely was that Dr. Goodwin had not treated anyone for brain injuries since 2015 and had focused her practice elsewhere—such as on "CoolSculpting and fat-reduction consultations" since then. *See* Dkt. 45 at 6–7. The Court has found Defendants' argument without merit in that regard, as a basis for excluding her testimony. The record demonstrates Dr. Goodwin's qualifications to offer expert testimony on the issues related to traumatic brain injury and deficits in cognitive function, including that she treated and examined "brain injured children on a daily basis for a total of hundreds to thousands of patients." Dkt. 48-1 ("Goodwin Decl.") ¶ 10. At least 80-90 percent of

the children she treated at the Children's Medical Center were being treated for brain injuries. Dkt. 48-8 at 12.

While much of her qualifications arise from her extensive practice during 2009-2015 and earlier, Dr. Goodwin has further clearly demonstrated her credentials and expertise in the field of traumatic brain injuries, pediatric brain injuries, including identifying loss of brain function. Dr. Goodwin testified that she saw "hundreds" if not more children and teenagers who suffered mild to severe traumatic brain injuries during that six-year period. *See, e.g.*, Dkt. 48-8 at 13. This substantial experience as well as more recent, continuing experience, education and training offer yet further basis to establish her qualifications. For example, Dr. Goodwin's American Medical Association Physician Recognition Awards from 2018, 2019 and 2020, *see* Goodwin Decl. ¶ 15, as well as her board certifications in Physician Medicine and Rehabilitation, and Pediatric Rehabilitation Medicine, *id.* ¶¶ 16–20, all further substantiate her current qualifications and credentials to serve as an expert in these fields.

Defendants argue that Dr. Goodwin herself stated that neuro-ophthalmologists were appropriate specialists to diagnose VOD. Dkt. 45 at 7. To be sure, Dr. Goodwin did testify that neuro-ophthalmologists were specialists who could diagnose VOD. *See* Dkt. 45-2 ("Goodwin Rep.) at 24. But she did not testify (nor did Defendants provide any substantial, supported basis for this Court to conclude) that Dr. Goodwin believed *she was not* qualified to diagnose VOD— indeed, just the contrary. In her declaration, Dr. Goodwin specifically attested that she is "trained to specifically look for dysfunctions in the brain when presented with evidence of a brain injury, including in the areas of eye movements, vision and visual processing," and that included "visual and vestibular functions." Goodwin Decl. ¶¶ 20–21. Dr. Goodwin did express concerns that "average, front-line physicians" were "not equipped or trained to catch VOD," Goodwin Rep.

at 24, however, the record does not reflect that Dr. Goodwin was such a "front-line physician." Rather, she had substantial experience treating hundreds if not more patients (including children and teenagers) with traumatic brain injuries. Moreover, Dr. Goodwin attested that "it is a routine part of [her] physical exam on patients with TBI" to check for VOD, and that she had "extensive experience in checking for this dysfunction, identifying it and managing it in patients." Goodwin Decl. ¶ 23. At bottom, Dr. Goodwin's experience demonstrates that she was well qualified based upon her hundreds if not thousands of traumatic brain injury cases at Children's Medical Center, as well as her subsequent education, training and expertise, to identify and manage VOD, and thereby possessed the specialized skill, knowledge, and experience in the particular field(s) at issue to qualify as an expert under *Daubert* and its progeny.

Finally, Defendants argue that Dr. Goodwin's own testimony established that she would have needed to conduct more than "basic bedside maneuvers," but instead use more expensive, complex equipment to catch VOD. Dkt. 45 at 7–8. The Court has also found this challenge to Dr. Goodwin's methodology to be unpersuasive, and found that Plaintiff had demonstrated that her methodology was reliable such as would support admissibility of Dr. Goodwin's testimony. The evidence, including Dr. Goodwin's testimony, was that there were benefits (and drawbacks) to both the bedside tests and more complex, expensive equipment—but not that her methodology would not catch symptoms of VOD. *See, e.g.*, Dkt. 48-8 at 67 ("I'm saying that I picked up on a basic bedside maneuver something that at the time that I evaluated him indisputably indicated vestibulo-ocular dysfunction at the rate of speed that I moved his head."); *id.* (testifying to the "limited amount of testing that I can do" under circumstances she examined Plaintiff); *id.* at 69 (testifying to "rotary chairing," which "definitely cost[s] a lot" and can "pick up some subtle things that are hard to see with the naked eye," but also testifying to the "shortcoming of a rotary

3

chair," which "only measur[es] the vestibular apparatus as you are moving in this plane," and that "leaves a gap in the testing"). The evidence and argument support that there is sufficient factual basis for this Court to conclude that Dr. Goodwin's methodology was scientifically valid and could be applied to the facts at issue, supporting the admissibility of such testimony under *Daubert* and its progeny.

All of the points Defendants raised could be raised on cross and go to the weight of the evidence rather than its admissibility.

Entered this  28th  day of September, 2021.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

                                               */s/ Norman K. Moon*
                                               NORMAN K. MOON
                                               SENIOR UNITED STATES DISTRICT JUDGE